SAMUEL BARNETT, Suing on Behalf of Himself and of All Other Policyholders Similarly Situated, Plaintiff, *v.* METROPOLITAN LIFE INSURANCE COMPANY, Defendant.

First Department, December 18, 1939.

*Alvin T. Sapinsley* of counsel [*Edwin J. Lukas* with him on the brief; *Sapinsley, Lukas & Santangelo*, attorneys], for the plaintiff.

*Wm. Marshall Bullitt* of counsel [*Harry Cole Bates* with him on the brief; *Tanner, Sillcocks & Friend*, attorneys], for the defendant.

GLENNON, J.   Plaintiff is a policyholder of defendant, a mutual life insurance company.   While the amount which he seeks to recover is relatively small, still there are a great many policyholders of the defendant company whose rights to dividends will be governed by the outcome of this case.   In our discussion we will deal with what we consider only the essential facts since the submission covers a great many pages of the record.

Plaintiff is the holder of a policy of insurance containing three benefits, as follows: (1) death benefits ($5,000); (2) disability benefits, (a) waiver of the $87.95 annual premiums, and (b) payment of $50 monthly income; (3) accidental death benefits, double indemnity ($5,000 additional) in the event of accidental death.

The disability and accidental death benefits were provided for by rider forms annexed physically to the policy, which was issued on September 17, 1929, and is presently in full force and effect.

The main question to be determined is whether the defendant insurance company should have paid a larger dividend on plaintiff's policy during the years 1931–1937 " solely by reason of its containing a provision for double indemnity in event of accidental death."

Specifically, plaintiff contends that the company has accumulated many millions of dollars which constitute profits realized on accidental death benefits and has placed this money in its contingency reserve fund instead of paying it in the form of dividends as part of the distributable surplus.

In two very recent cases this court and the Court of Appeals have had occasion to consider the background of the general business of mutual life insurance companies, and also their manner of calculating premiums and reserves and distributing dividends.   (*Rhine* v. *New York Life Ins. Co.*, 248 App. Div. 120; affd., 273 N. Y. 1; *Rubin* v. *Metropolitan Life Ins. Co.*, 251 App. Div. 382; affd., 278 N. Y. 625.)   This makes unnecessary any general discussion of this defendant's business methods except in so far as they specifically pertain to the claims advanced by plaintiff.

It is agreed in the submission that in 1915 defendant first commenced to issue ordinary life participating policies, that is, those entitled to dividends.   At that time the company had behind it

fifty years of experience with all the necessary elements pertaining to ordinary life insurance. As a result the defendant had no difficulty in making conservative assumptions as to mortality, interest and expense. The result has been favorable and the company has used positive factors in calculating the dividends to be paid upon the policies from year to year.

It might be well at this point, since reference will be made to certain factors used by the company in calculating its divisible surplus, to refer to the opinion of Mr. Justice DORE in *Rhine* v. *New York Life Ins. Co. (supra)*, wherein he said: " In the creation of any mutual life insurance company's surplus the factors employed by every mutual life insurance company in the ascertainment and apportionment of its divisible surplus are ' positive ' or ' negative ' or ' zero ' as follows: If the mortality is less than the mortality table employed, or the interest is greater than the rate assumed, or the expenses are less than assumed in the calculation of the premium, or the disability claims are less than in the disability table employed, then the respective elements of mortality, interest, expense or disability are positive, otherwise, such respective elements are negative. In any case where the mortality, interest, expense or disability experience equals the tabular rate the element is zero, indicating by such descriptive mathematical term, no contribution, either positive or negative, to the divisible surplus from the particular source to which the zero factor refers, that is, no divisible profit or loss is indicated from such element in the determination of the dividend."

The company, in 1918, began to issue ordinary life policies containing what are commonly termed disability benefits. The company, as is agreed, had no experience in this field. For the calculation of the premiums to be charged and the reserve to be held, the company adopted and used certain conservative and well-known tables. At first the tables used proved to be accurate. Later, however, fluctuations in disability claims showed losses in specific years. Despite the fluctuations the company decided and did use a zero factor in calculating dividends to be paid until such time as its long range experience in this field of insurance should give the company more accurate information. In 1933, because of the continuing losses running into many millions of dollars, the company abandoned the zero factor and thereafter used a negative factor in dividend distribution. This change on the part of the company was held to be proper in the *Rubin* case *(supra)*.

In 1919, Metropolitan issued policies of ordinary life insurance containing accidental death benefits. Again it had no experience in the field. It adopted a table for premium and reserve based upon

an assumption of a uniform accidental death rate of one per one thousand policyholders at all ages between fifteen and ninety-six. For a number of years the company's experience at younger ages was favorable, that is to say, the accidental death rate was less than one per one thousand. However, the company, as time went by, found that as the policyholders advanced in years the accidental death rate increased and that at older ages the rate was distinctly greater than one per one thousand. Because of this, in 1923, it limited coverage under accidental death benefits to persons dying under the age of sixty-five.

In 1933 the company finally determined that its experience at the younger ages was favorable but at the older ages adverse. It did not, however, have sufficient information then, and claims not to have it now, to determine the extent of its adverse experience with accidental death benefits at the older ages. Despite this, the company nevertheless used a zero factor in its distribution of dividends.

In May, 1938, the defendant decided that it had sufficient long range experience at the younger ages and enough at the older to use a positive factor in determining dividends at the younger ages, to increase the legal reserve for accidental death benefits at all ages and to require all policyholders with accidental death benefits to contribute to the contingency reserve.

To sum up, the position of defendant is as follows: during the first fifteen years the company was necessarily waiting for a sufficient time to elapse within which to determine (for dividend purposes) its long-range accidental death experience at all ages. At the younger ages, accidental deaths continued to be fewer than Metropolitan had anticipated; but, among the comparatively few policyholders over the age of fifty, it unexpectedly developed that accidental death claims rapidly increased with advancing age over the anticipated uniform rate of one per one thousand policyholders. While such limited adverse experience at the older ages might possibly have been caused by accidental variations due to chance among small numbers, nevertheless, as far back as 1925, Metropolitan decided (1) that a reserve calculated on a table of one per one thousand would be insufficient to pay the future claims as the older ages were attained; (2) that Metropolitan would have to recalculate its entire accidental death reserves upon a stricter table showing considerably more than one death per one thousand at such older ages; (3) that, therefore, the accidental death benefits' contributions to the contingency reserve would have to be used to supply the required increase in legal reserve when recalculated upon a stricter table than one per one thousand; and (4) that the con-

tingency reserve (thus depleted) must be not only restored, but further increased to provide for certain newly anticipated excessive claims such as greatly increased automobile and aviation accidents. Therefore, instead of reducing its contingency reserve by returning a part thereof to its policyholders as dividends, Metropolitan retained the contingency reserve and increased it each year in order to protect its increasing liabilities, and also (a) for the usual unforeseen contingencies, and (b) especially to meet the anticipated increased claims for accidental death benefits at the older ages, and those resulting from new causes of accidents.

The defendant fixes its annual dividend rate according to what is commonly called " the contribution " method. This method was discussed at length and approved in the *Rhine* case both by this court and the Court of Appeals. It was again approved in the *Rubin* case. We find that the defendant company has rigorously followed this method and that there have been no mistakes made in its theory of calculations. The plaintiff does not claim any fraud, bad faith or willful neglect on the part of the defendant. He simply asserts that the latter has placed illegally in its general contingency reserve the profits arising from accidental death benefits; that it exceeded the limits allowed under section 87 of the Insurance Law, and that as a result he and all others similarly situated have been subjected to unfair discrimination.

It has been held that *prima facie* the apportionment of the divisible surplus by a mutual life insurance company must be deemed equitable. The officers of the company are allowed discretion in making the apportionment. This rule was definitely stated by JUDGE LEHMAN in the *Rhine* case (*supra*), as follows: " Insurance companies, however, issue policies with many variations in terms and conditions to individuals of different ages and unequal expectation of life. There the statute leaves discretion to each company as to what constitutes an ' equitable ' apportionment, and when ' directors have exercised their discretion in regard thereto the courts will not interfere unless there is bad faith, or willful neglect, or abuse of such discretion.' (*Greeff* v. *Equitable Life Assur. Society,* 160 N. Y. 19, 32.) * * *

" We have not overlooked the fact that the defendant company did not determine until 1931 that apportionment should be made in this manner, and that other companies still make other apportionment. The Insurance Law allows, as we have said, discretion in the manner in which apportionment may be made. So far as appears now, it may well be that both methods of apportionment lie within the range of that discretion."

We cannot say from a consideration of all the facts which go to make up this controversy that the directors of the defendant company violated either the intent or the spirit of the Insurance Law in adopting the methods that they have pursued in the computation and the payment of dividends on the policies in question. The following statement appears in the submission: "*Fourth.* The question for the Court to decide is whether or not Metropolitan had the right (during the fiscal years 1921–37) in the apportionment and distribution of its Divisible Surplus, to declare and pay the same dividend (per $1,000 face amount of insurance) upon life insurance policies with a provision for Accidental Death Benefits as it declared and paid (per $1,000 face amount of insurance) upon identical policies without any provision for Accidental Death Benefits."

Our answer thereto is that the directors of the Metropolitan had the right in their discretion to declare and pay the same dividend upon life insurance policies with a provision for accidental death benefits as it declared and paid upon identical policies without any such provision.

Therefore, we have determined to render judgment in favor of defendant.

MARTIN, P. J., UNTERMYER, DORE and CALLAHAN, JJ., concur.

Judgment unanimously directed in favor of the defendant. Settle order on notice.