MAYNARD *v.* MUTUAL LIFE INS. CO.

*(Nashville,* December Term, 1941.)

Opinion filed July 25, 1942.

E. W. BRADEN, of Memphis, for plaintiff in error.

FITZHUGH, MURRAH & FITZHUGH, of Memphis, and WM. MARSHALL BULLITT, of Louisville, Ky., for defendant in error.

MR. SPECIAL JUSTICE J. ROY HICKERSON delivered the opinion of the Court.

On August 29, 1929, defendant, the Mutual Life Insurance Company of New York, issued to plaintiff, James W. Maynard, an Ordinary Life Insurance policy with Disability Benefits for $25,000.00. This policy was later changed in certain respects at the request of plaintiff. These changes are not material to the present suit.

Pertinent excerpts from the policy are: "If the insured is totally and presumably permanently disabled before age 60, will pay to the insured Two Hundred Fifty Dollars monthly during such disability, besides waiving premium payments, all upon the conditions set forth in section 3."

"Section 3. . . . Neither the dividends nor the amount payable in any settlement hereof shall be decreased because of disability benefits granted."

Plaintiff became disabled in 1935, and was paid dividends by defendant equal to those received by holders of policies without disability benefits during 1935 and 1936. In 1937 defendant offered to pay plaintiff, and plaintiff refused to accept, a smaller dividend than it paid to holders of policies without disability benefits. Defendant based its action in so doing on the following grounds:

(1) The type, class or group of policies which plaintiff held proved to be extremely unprofitable. Large losses resulted which had to be absorbed by defendant in some way.

(2) Each policy of this group constituted one insurance contract with two features, death benefits and disability benefits.

(3) The equitable method for distributing the divisible surplus of defendant was to treat this group of policyholders as a class, and pay dividends to them according to their contribution to the divisible surplus of defendant as a class.

Plaintiff brought this suit to recover from defendant for a sum equal to the amount of dividends which was paid the holders of policies without disability benefits.

The trial court dismissed plaintiff's suit and plaintiff appealed to this Court and assigned errors.

On the trial of the case in the lower court, Attorney for plaintiff stated: "I am suing strictly upon a construction of this contract, and I will be very frank to say to Your Honor that it is a question that has never been passed upon in the State of Tennessee so far as I have been able to determine. They will contend, no doubt, that it has been passed upon in the State of New York in the *Rhine Case*. [*Rhine* v. *New York Life Insurance Company*, 248 App. Div., 120, 289 N. Y. S., 117]. In the *Rhine Case* in the highest court of New York [273 N. Y., 1, 6 N. E. (2d), 74, 108 A. L. R., 1197], on facts as I take it that are exactly similar to the facts that will be admitted in this case, because I am conceding or admitting that everything that they put in this plea in abatement are true. It is simply a question of the construction of this policy and construction of the laws of Tennessee, which are almost identical with the laws of the State of New York as to whether we are entitled to these dividends.

"Now if your Honor please, I am equally frank to say that I am relying solely upon a dissenting opinion in a

New York case, and that is my authority for taking this position. I think it is sound. And Your Honor of course is not bound by any New York decision or decision from any other State. And that is going to be our position in the matter.''

Plaintiff relies upon Tennessee Code, Section 6132 which provides: ''No life insurance company doing business in Tennessee shall make or permit any distinction or discrimination between insurants of the same class and equal expectation of life in the amount or payment of premiums, . . . or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contracts it makes; . . .''

Plaintiff and defendant also rely upon the following sections of the Insurance Law of New York, Consol. Laws, c. 28: ''Section 83. Distribution of surplus to policyholders. . . . Every domestic life insurance corporation . . . shall provide in every policy . . . that the proportion of the surplus accruing upon said policy shall be ascertained and distributed annually and not otherwise. Upon the thirty-first day of December of each year . . . every such corporation shall well and truly ascertain the surplus earned by such corporation during said year. After setting aside from such surplus . . . a contingency reserve not in excess of the amount prescribed in this article, every such corporation shall apportion the remaining surplus equitably to all other policies entitled to share therein.''

''Section 89. Discriminations prohibited. No life insurance corporation . . . shall make or permit any discrimination between individuals of the same class or of equal expectation of life, in the amount or [of] payment or return of premiums or rates charged for policies of insurance . . . or in the dividends or other bene-

fits payable thereon, or in any of the terms and conditions of the policy."

"Section 108. Discriminations under accident or health policies prohibited. No insurance corporation . . . shall make or permit any discrimination between individuals of the same class in the amount of premiums, policy fees, or rates charged for any policy of accident or health insurance, or in the benefits payable thereunder, or in any of the terms or conditions of such insurance contract, or in any other manner whatsoever."

The provisions of the Tennessee Statute and the New York Statute relating to discrimination are similar.

Now if the policy issued plaintiff is divisible—that is two separate contracts, one for death benefits and another for disability benefits—the method adopted by defendant for computing dividends on plaintiff's policy would be discriminatory since plaintiff would be entitled to receive dividends under his death benefit contract (ordinary life policy) which would equal dividends received by policyholders under ordinary life policies without disability benefits.

Wherefore, the two questions presented for the determination of this Court are: (1) Is the policy which was issued plaintiff by defendant one contract or is it two separate and distinct contracts—one for death benefits only and the other for disability benefits only? And (2) Was defendant's apportionment of its divisible surplus to plaintiff and the group which he represented equitable?

In *Rhine v. New York Life Insurance Company*, 248 App. Div., 120, 289 N. Y. S., 117, 132, the court considered whether a similar policy was a single policy or a severable policy and said:

"We reach the conclusion that the policy is one agreement, a single policy, with both death and disability benefits so interwoven as to constitute a single integral insurance contract. . . .

"In its physical aspect, the policy is one instrument. A consideration of the provisions for disability benefits makes it clear that if all of these provisions were taken together apart from the rest of the policy, it would be impossible to spell out a separate contract for disability insurance; there would be . . . no identifiable sum to be paid (for the disability benefits cannot be obtained without the death benefit), and no identifiable person to receive the payment. The provisions for disability benefits are so intimately dependent upon and unintelligible without the death benefit provisions as to be by themselves impossible of constituting a separate contract. There was one application for the policy, not two, and provision is made for one premium. Throughout the policy the single number is invariably used, never the plural; it is referred to as 'this policy,' 'the policy,' 'this contract,' 'the contract,' 'the entire contract'; the policy thus describes itself about seventy-four times in the singular. . . . The disability benefits . . . cannot be obtained separately, and cannot be continued in force independently of the death benefit in the policy. When the annual premium became due, if plaintiff tendered the $2.96 specified as the amount for the disability benefits, she could not compel the defendant to continue the disability benefits unless the balance of the premium was paid.

"From all the above it follows that the policy is a single contract containing various provisions and various promises, severable and divisible in one sense as a remedial measure for enforcement, but the policy cannot

be taken, as plaintiff contends, as the equivalent of two separate policies, one the exact equivalent of a policy of life insurance with merely a death benefit, and the second an independent contract or policy covering disability benefits. . . . Were the life insurance provision stricken out at the outset there would have been no contract whatever, as disability benefits are issued only when the terms thereof are printed in a life insurance policy; they cannot be separately obtained.''

Likewise in *Rubin* v. *Metropolitan Life Insurance Company,* 251 App. Div., 382, 384, 296 N. Y. S., 908, 910, held:

''The disability 'rider' taken alone is incomplete and meaningless and, except by reference to the remaining provisions of the policy, fails to disclose most of the essential terms. Moreover, the policy describes itself many times as a single policy. These circumstances without reference to many others, require the conclusion that the policy, together with the 'Supplementary Contract,' constitute a single instrument, both by physical union and in legal effect. Indeed, we find nothing to justify a distinction in the respective rights and liabilities of the defendant and its policyholders under the plaintiff's policy and the policy of insurance under consideration in the *Rhine Case.*''

See, also, *Howard W. Blackburn* v. *Home Life Insurance Company of New York,* 19 Cal. (2d), 226, 120 P. (2d), 31.

It is conceded by plaintiff that the courts have decided this question against his contention. He frankly states that he bases his case upon the dissenting opinion in the *Rhine Case* and urges this Court to adopt the reasoning and conclusions in the dissenting opinion.

We have carefully considered this dissenting opinion but feel constrained to follow the decision of the ma-

jority in the *Rhine Case*. This conclusion was later followed by the same court in the *Rubin Case*.

We hold therefore that the policy issued by defendant to plaintiff was a single contract which contained both death and disability benefits. In determining whether defendant equitably apportioned its divisible surplus to plaintiff and other policyholders of that group we treat each policy of that group as a single contract and the contributions of such policy to the divisible surplus of defendant as a whole and not as contributions for death benefits and contributions for disability benefits.

We next consider the question: Was defendant's apportionment of its divisible surplus to plaintiff and the group which he represented equitable? This question has been determined by other courts.

A similar question was presented to the court in *Rhine* v. *New York Life Insurance Company*, 248 App. Div., 120-136, 137, 289 N. Y. S., 117, 134, wherein the court held:

". . . the apportionment, as made by the company, must be regarded prima facie as an equitable apportionment. . . . We cannot say that the use of the negative disability factor since 1931 is erroneous, inequitable, beyond the exercise of the directors' reasonable discretion, or a breach of statutory or contractual obligation."

In affirming that decision, the Court of Appeals (LEHMAN, J.) said (273 N. Y., 1, 8, 18, 6 N. E. (2d), 74, 76, 108 A. L. R., 1197):

"Insurance companies, however, issue policies with many variations in terms and conditions to individuals of different ages and unequal expectation of life. There the statute leaves discretion to each company as to what constitutes an 'equitable' apportionment, and when 'directors have exercised their discretion in regard thereto

the courts will not interfere unless there is bad faith, or willful neglect, or abuse of such discretion.' *Greeff* v. *Equitable Life Assur. Society,* 160 N. Y., 19, 32, 54 N. E., 712, 715, 46 L. R. A., 288, 73 Am. St. Rep., 659. . . .

"We have not overlooked the fact that the defendant company did not determine until 1931 that apportionment should be made in this manner, and that other companies still make other apportionment. The Insurance Law allows, as we have said, discretion in the manner in which apportionment may be made. So far as appears now, it may well be that both methods of apportionment lie within the range of that discretion."

The *Rhine Case* was followed in *Rubin* v. *Metropolitan Life Insurance Company,* 251 App. Div., 382, 296 N. Y. S., 908; Id., 278 N. Y., 625, 16 N. E. (2d), 293; *Barnett* v. *Metropolitan Life Insurance Company,* 258 App. Div., 241, 16 N. Y. S. (2d), 198; Id., 285 N. Y., 627, 33 N. E. (2d), 554; *Sullivan* v. *Penn. Mut. Life Ins. Co.,* 7 Cir., 100 F. (2d), 560; and *Blackburn* v. *Home Life Insurance Company of New York,* December 24, 1941, 19 Cal. (2d), 226, 120 P. (2d), 31.

We hold that defendant's method of apportionment of its divisible surplus to plaintiff was equitable and did not violate his policy contract or the laws of New York or Tennessee.

The judgment of the trial court is affirmed with costs.

## CONCURRING OPINION.

MR. JUSTICE DeHAVEN delivered a concurring opinion.

In 1929, defendant, Mutual Life Insurance Company of New York, issued to plaintiff, James W. Maynard, a policy of ordinary life insurance with disability benefits, in consideration of an annual premium of $778.50 of

which $75.73 was the premium charged for disability benefits.

Due to losses sustained by the company arising from disability benefits paid under the class or type of policy here involved, beginning in 1937 it paid a smaller dividend on disability policies than it paid on nondisability policies.

The plaintiff became disabled in 1935 and was paid the stipulated benefits. He is seeking by his action herein to recover of the company the sum of $75.73 alleged to be due him because of the company's action in refusing to pay him the same rate in dividends as was paid on the same type of policy not providing for disability benefits.

Plaintiff predicates his right to recover upon the following provision found in section 2 of the policy:

"Neither the dividends nor the amount payable in any settlement hereof shall be decreased because of Disability Benefits granted."

It is insisted that once the plaintiff had established the condition precedent to his disability benefits, the company became obligated to pay: (1) $250 per month, (2) waive the premiums, and (3) not to decrease his dividends.

Section 2 of the policy is captioned "Benefits in Event of Total and Permanent Disability before age 60." The language employed in section 2, above quoted, obligated the company not to decrease dividends nor the amount payable in any settlement because of disability benefits granted the insured, Maynard. It does not mean that dividends shall not be decreased as a result of loss to the company arising out of the disability feature of policies of the type here involved. Defendant is a mutual company and it would be inequitable to allocate dividends to dis-

ability policies when disability insurance showed a loss. The dividends declared by the company were entirely equitable. The judgment of the trial court should be affirmed.

All the other members of the Court concur in this opinion.