Zimmerman, J.
 

 Under the policy of insurance in issue the defendant agreed to pay to the insured’s beneficiaries the sum of $5,000 upon receipt of due proof of the insured’s death, or $10,000 upon due proof that such death resulted from bodily injury effected solely through external, violent and accidental means. The policy provides further that if the insured is total
 
 *344
 
 ly and presumably permanently disabled before tbe age of 60 years, tbe insurer will pay tbe insured $50 monthly during such disability, increasing after five and ten years continuous disability, etc.
 

 It is stated in the policy:
 

 “This policy is issued in consideration of tbe application and of tbe payment of tbe first premium of sixty-six and 00/100 dollars, receipt of wbicb is hereby acknowledged, and of the payment to the company of sixty-six and 00/100 dollars (of which two and 80/100 dollars is the premium for the double indemnity benefit and seven and 95/100 dollars the premium for disability benefits) on each nineteenth day of July and January hereafter until forty-three full years’ premiums shall have been paid or until the prior death of the insured.”
 

 In support of his case the plaintiff makes the principal contentions:
 

 1. That Section 94Ó3, General Code, applies and should be read as a part of his insurance contract.
 

 2. ■ That Section 9403, General Code, requires defendant to pay annually to the holders of its life policies with disability benefits dividends at the same rate as it annually pays dividends to the holders of its life policies without such benefits.
 

 3. That' defendant is bound by the practical construction which it gave plaintiff’s insurance policy and other like policies over a period of years, during which time it paid dividends to those holding life policies including disability provisions on the same basis as it paid to those holding life policies lacking such benefits.
 

 On the other hand, the defendant argues:
 

 1. That plaintiff’s policy containing death and dis
 
 *345
 
 ability benefits constitutes a single integral insurance contract.
 

 2. That policies of life insurance are not “of the same class” within the meaning of Section 9403, General Code, where some contain disability benefits and others do not.
 

 3. That the payment of dividends on an insurance policy must be based upon the contribution of that policy as a whole to the insurer’s divisible surplus.
 

 4. That the apportionment of the defendant’s divisible surplus to plaintiff and to the holders of similar policies was fair and equitable and was so determined by both the lower courts.
 

 As already suggested, plaintiff’s action is founded on the claim that defendant can make no differentiation in the payment of dividends between its policies of life insurance containing disability benefit provisions and it§ life policies where no such provisions are included.
 

 In our opinion, the solution of the problem presented turns on whether a policy such as plaintiff’s is to be treated as two separate and distinct agreements of insurance — one covering death benefits and the other disability benefits — or whether it is to be treated and regarded as a single integral contract.
 

 This proposition has been before a number of courts and all of them, so far as we can ascertain, have held that a policy of insurance like plaintiff’s constitutes one contract containing both death and disability provisions, and that the holders of policies of that charac-, ter are entitled to dividends on the basis of the contributions of such policies as a group or class to the divisible surplus of the insurer. In other words, the computation and payment of dividends by the insurer
 
 *346
 
 are to be measured by tbe contributions of such policies as units to the divisible surplus of the insurer and not on the basis of the separate contributions for death benefits and the separate contributions for disability benefits.
 

 From an examination of the insurance policy here involved it is plain that the agreement as to the payment of disability benefits is dependent on the provisions relating to the payment of death benefits. For example, plaintiff, by tendering the sum of $7.95, representing the premium for disability benefits, could not require the defendant to continue separately its undertaking to pay such benefits unless at the same time plaintiff paid the premium for the life insurance. The terms of the policy permit no other conclusion. If plaintiff wishes to reduce his premium payments and better himself in the future with respect to the receipt of dividends, he may take advantage of that part of the policy which allows the termination of the provisions for disability benefits upon written request therefor. However, he does not possess the right, under the language of the policy, to terminate that part of the insurance contract relating to death benefits and retain that part covering disability benefits. The provisions as to disability benefits cannot stand alone independent of the provisions as to death benefits. In support of the above comments, attention is directed to the following cases, and to other cases cited therein:
 

 Rhine
 
 v.
 
 New York Life Ins. Co.
 
 (1936), 273 N. Y. 1, 6 N. E. (2d), 74, 108 A. L. R., 1197;
 
 Sullivan
 
 v.
 
 Penn Mutual Life Ins. Co.
 
 (1938, C. C. A. 7), 100 F. (2d), 560;
 
 Blackburn
 
 v.
 
 Home Life Ins. Co. of New York
 
 (1941), 19 Cal. (2d), 226, 120 P. (2d), 31;
 
 Maynard
 
 v.
 
 *347
 

 Mutual Life Ins. Co.
 
 (1942), 179 Tenn., 267, 165 S. W. (2d), 385.
 

 By the provisions of Section 9403, General Code, “no life insurance company doing business in this state shall make or permit any distinction or discrimination in favor of individuals between the insured of the same class and equal expectation of life in the amount of payment of premiums, or rates charged for policies of life or endowment insurance, or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contracts it makes. ’ ’
 

 In our opinion, an insured who holds a plain life policy and one who holds a policy containing added benefits for disability are not “of the same class” within the contemplation of the statute. The wording of the policies themselves, the premiums collected and the obligations assumed by the insurer with respect to each kind of policy are different.
 

 As has previously been indicated, the defendant adopted the “contribution method” as to the policies of insurance it issued. At first, it used what is known as the “zero factor” in calculating dividends on those life policies containing disability provisions. The application of this factor resulted in the payment of dividends at the same rate on policies of this class as on life policies lacking such feature. As time passed, the defendant discovered that it was sustaining considerable losses by pursuing such course. Thereupon, it discarded the “zero factor” as to its policies with disability benefits and adopted a “negative factor” in the distribution of its divisible surplus by way of dividends on this group of policies. Such method enabled policyholders to receive back as dividends their
 
 *348
 
 contributions to the divisible surplus and prevented any policyholders from receiving as dividends more than they had contributed to such fund.-
 

 Both lower courts concluded that plaintiff’s policy of insurance is one integral contract. Upon the record before them, they also approved defendant’s procedure in apportioning and distributing dividends to plaintiff and to others holding the .same type of policy. Moreover, they adjudged that such apportionment and distribution were proper and equitable. We find no sufficient reasons to disturb such determinations.
 

 In making the point that defendant lacked the right and authority to decrease dividends on life policies including the disability feature, after having paid higher dividends on these policies over a period of years, the plaintiff relies upon a certain booklet issued by the defendant, which appears not to have been considered by the trial court because of defendant’s objections thereto.
 

 Subdivision 12 of the stipulation entered into between plaintiff and defendant mentions this booklet as follows:
 

 “12. A certain book was published by Mutual Life in October 1926 and designated as ‘The Mutual Life Insurance Company of New York — Premium Rates, Guarantees and Rules, Regulations and Instructions for Local Agents and Solicitors.’ A printed copy of said book was filed by Mutual Life with the Superintendent of Insurance of the state of Ohio upon its publication. Said book was distributed by Mutual Life to its local agents throughout Ohio during the years 1926, 1927, 1928, 1929 and 1930, including the author
 
 *349
 
 ized solicitor who solicited Mr. Chastang; and said book shall be received in evidence.”
 

 Referring to policies of life insurance with disability benefits, the booklet contains the statement:
 

 “Insurance, Guarantees and Dividends Not Decreased. * * * Tim guaranteed cash, loan, and other values are the same as those in policies without disability benefits, and such values will increase each year in the same manner
 
 *
 
 * * .”
 

 Objection was made to the competency of the booklet under subdivision 15 of the stipulation, reading:
 

 “15. Mr. Chastang and Mutual Life have the right to except to any and all statements in Mutual Life’s answers to the interrogatories and to any and all statements in this stipulation, upon the ground of incompetency, irrelevancy or immateriality * * * .”
 

 In our view, the booklet does not affect materially the issues in this case. The entire contract between the plaintiff and the defendant is represented by the written application for the policy and the policy issued and delivered pursuant thereto, which do not refer to the booklet or its contents, and there is no showing anywhere in the record that plaintiff ever saw the booklet or in any way relied upon the statements contained therein in applying for insurance. Furthermore, the excerpt from the booklet quoted above was certainly not a warranty or guarantee that dividends would remain unchanged in the future.
 

 For a discussion of a, similar situation, where a plaintiff claimed he relied upon this booklet together with the representations of the soliciting agent in respect to the payment of dividends on an insurance policy resembling plaintiff’s, see
 
 Pratt
 
 v.
 
 Mutual Life
 
 
 *350
 

 Ins. Co. of New York
 
 (1944), 157 Kan., 710, 145 P. (2d), 113. See, also, 29 American Jurisprudence, 195, Section 176.
 

 Because of the views herein expressed, it becomes unnecessary to consider or decide other matters advanced by counsel in .their printed briefs and upon oral argument.
 

 Finding no reversible error in the judgment of the Court of Appeals, that judgment is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Turner, Matthias and Hart, JJ., concur.
 

 Bell, J., dissents.
 

 Sohngen, J., not participating.