[No. 12807.   In Bank. — May 26, 1891.]

IRA P. RANKIN ET AL., RESPONDENTS, v. THE AMAZON INSURANCE COMPANY, APPELLANT.

FIRE INSURANCE — POLICY — REFERENCE TO SURVEY — WARRANTY — REPRESENTATION — RESCISSION. — Where a fire insurance policy refers for further particulars to the application and to a survey and diagram on file, described "as furnished by and made a warranty on the part of the assured, and made a part of the policy," the fact that the survey and diagram were not furnished until after the policy was delivered, a'though it might prevent them from operating as a warranty under section 2605 of the Civil Code, does not destroy their effect as a representation of facts made as an inducement for the issuance of the policy, and as such they are evidence which the jury should consider upon an issue as to rescission of the policy.

ID. — POLICY PAYABLE TO CREDITORS — PROMISE OF CREDITORS — AUTHORITY FOR SURVEY AND DIAGRAM — AGENCY FOR OWNERS. — The plaintiffs, creditors of the assured and payees of the policy, having promised to furnish the survey and diagram referred to in the policy, and they having been furnished in accordance with their agreement, and having become a part of the contract, could not object to their introduction in evidence on the ground that the agents who signed them for the owners of the insured property as applicants had no authority to act on behalf of the owners.

ID. — FALSITY OF MATERIAL REPRESENTATIONS — RESCISSION OF POLICY — CANCELLATION. — If any of the material representations of an applicant

for fire insurance, made as an inducement for the issuance of the policy, are false, the tender by the insurer of the premium, and notice that the policy was canceled, before the commencement of a suit by the insured, operates to rescind the contract, and will defeat the suit.

ID. — EMPLOYMENT OF WATCHMAN — NON-FULFILLMENT OF CONDITION — QUESTION OF LAW. — A condition in a policy of insurance upon a mill, that during such time as the mill is idle a watchman shall be employed by the insured "to be in and about the premises day and night," is broken if during the time that the mill was idle but one watchman was employed, who was not instructed to watch the mill at night, and who slept every night in a building distant three or four hundred feet from the mill; and upon such a state of facts it is error to submit to the jury the question whether the insured had performed the conditions of the contract.

ID. — CONSTRUCTION OF POLICY. — Where the language of a policy is ambiguous, it is to be construed most strongly against the insurer, but where there is no ambiguity, it must be construed, like any other contract, according to the intention of the parties.

ID. — NIGHT-WATCHMAN. — A man employed to watch in the daytime, and who is permitted to sleep at night, is not a watchman at night.

ID. — NEGLIGENCE OF WATCHMAN — EMPLOYMENT IN GOOD FAITH. — Although a loss occasioned by the mere fault or negligence of the watchman, unaffected by fraud or design on the part of the insured, is within the protection of the policy, yet, to entitle the insured to recover, it must appear that he has in good faith employed a watchman to perform the duties required by the terms of the policy.

ID. — BURDEN OF PROOF. — The insurers having shown that the mill was idle, the burden was then cast upon the insured to show a compliance with the warranty in the employment of the watchman.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Haggin, Van Ness & Dibble,* for Appellant.

The survey and diagram referred to in the policy became and constituted a part of the contract between the parties, and the statements and promises therein were warranties. (Civ. Code, secs. 2605–2608.) And if such warranties, or any of them, were violated, the policy, from the date of such breach, ceased to bind the company. (Civ. Code, sec. 2612.) The only effect of the want of authority upon the part of Hoyt & Son to sign,

if such want of authority existed, would be to deprive the statement and promises of the character of express warranties. (Civ. Code, sec. 2605.) These statements and promises would still operate as representations (Civ. Code, secs. 2571–2577), and if they were materially false, such falsity would operate to avoid the contract. (Civ. Code, sec. 2611.) The burden of proof was upon the defendants to show that during the life of the policy the insured works were idle, having done which, the burden was upon the plaintiffs to show a compliance with the promissory warranty to keep a watchman. (*Cowan* v. *Phœnix Ins. Co.*, 78 Cal. 181; *Bobbitt* v. *L. & L. & G. Ins. Co.*, 66 N. C. 70; 8 Am. Rep. 494.) In construing policies of insurance, courts are governed by the same general rules which are applicable to other instruments, and effect is to be given to the intention of the parties, to be ascertained in the same method which is employed in the interpretation of other written contracts. (*Wells, Fargo & Co.* v. *Pacific Ins. Co.*, 44 Cal. 397; *Mack* v. *Rochester German Ins. Co.*, 106 N. Y. 560; *Sugg* v. *Hartford Ins. Co.*, 98 N. C. 143; *Washington Ins. Co.* v. *Kelly*, 32 Md. 445; Civ. Code, secs. 1636, 1647, 1649; *Barlow* v. *Scott*, 24 N. Y. 40.) The failure of the insured to have a watchman on the premises at night was a breach of the warranty that a watchman employed by the insured should be in and about the premises day and night. (*Trojan Mining Co.* v. *Fireman's Ins. Co.*, 67 Cal. 27; *Wenzel* v. *Commercial Ins. Co.*, 67 Cal. 438; *Sierra M. & N. Co.* v. *Hartford Ins. Co.*, 76 Cal. 235; 1 Wood on Insurance, 280; *Prov. L. Im. & Inv. Co.* v. *Masten*, 32 Md. 310; *Schneider* v. *Prov. L. Ins. Co.*, 24 Wis. 28; 1 Am. Rep. 157.) Negligence in a matter as to which the insurers expressly stipulate that they will not assume the risk will work a forfeiture. (May on Insurance, 2d ed., sec. 408; *Gates* v. *Madison Ins. Co.*, 5 N. Y. 469; 55 Am. Dec. 360.) As there is no conflict in the evidence, and it shows that the insured did not employ a watch-

man to be in and upon the premises day and night, the verdict should be set aside. (*Emerson* v. *County of Santa Clara*, 40 Cal. 543.)

*Doyle, Galpin & Zeigler*, and *Philip G. Galpin*, for Respondents.

The written contract of insurance specified a survey "then on file." Until a survey identified as "*then* on file" is produced, no survey becomes a part of the contract. The written contract cannot be altered by parol so as to read "a survey to be filed"; consequently the survey dated December 4th is not identified by the terms of the policy, and is not a part of it, nor of plaintiffs' application. (*Caldwell* v. *Center*, 30 Cal. 543; 89 Am. Dec. 131.) The watchman clause in the policy, like every other clause, must be construed liberally, and in favor of the assured. Conditions providing for disabilities and forfeitures are to receive, when the intent is doubtful, a strict construction against those for whose benefit they are introduced. (*Hoffman* v. *Ætna Ins. Co.*, 32 N. Y. 413, 414; 88 Am. Dec. 337; *Livingston* v. *Sickles*, 7 Hill, 255; *Breasted* v. *Farmers' etc. Co.*, 8 N. Y. 303; 59 Am. Dec. 482; *Catlin* v. *Springfield Fire Ins. Co.*, 1 Sum. 440.) If the watchman was negligent in performing his duty, the policy was not thereby avoided. (Civ. Code, sec. 2629; *Waters* v. *M. L. Ins. Co.*, 11 Pet. 219, 220; *Gates* v. *Madison Co. Ins. Co.*, 5 N. Y. 478; 55 Am. Dec. 360; *Johnson* v. *Berkshire Ins. Co.*, 4 Allen, 388; *Sierra Milling Co.* v. *Fire Ins. Co.*, 76 Cal. 236.)

PATERSON, J.—This is an action on a fire insurance policy to recover the sum of $548.24.

The policy contained the following clause: "Reference is hereby made to a survey and diagram on file in the office of J. C. Mitchell & Son, which is made a part of this policy, and a warranty on the part of the assured." The application for the policy was made on November

21st, but was not countersigned or delivered until November 24, 1884. Mitchell & Son, who were insurance brokers, acted on behalf of plaintiffs in procuring the policy, and they promised at the time the application was made to furnish the survey and diagram. The company refused to take the risk unless the brokers would agree to furnish such a survey. A survey and diagram was made by the owners of the property, and a copy thereof, dated December 4, 1884, was presented to the agents of the defendant, but at what precise time it was presented does not appear. On December 3, 1884, the policy was taken to the office of the defendant and the written portion thereof was changed, increasing the amount of the insurance, and another rider, which was duly authenticated and attached, was substituted, which contained the same reference, quoted above. The survey and diagram consisted of many questions and answers. It was written on the blank form of another insurance company, and was signed "Owens River M. G. & S. Co., by Hoyt & Son, applicants." The policy ran to the Owens River Iron and Smelting Co. (owners), "loss, if any, payable to Rankin, Brayton & Co." When this document was offered in evidence, plaintiffs objected to it on the grounds that the insurance had been effected prior to the time the survey was presented to the company, and that Hoyt & Son had no authority to act on behalf of the mining and smelting company. The objection was sustained; the defendant excepted.

The ruling was erroneous. The loss was not payable to the owners of the mine, but to their creditors, Rankin, Brayton & Co., and the question as to the authority of Hoyt & Son is immaterial. Plaintiffs promised to furnish the survey, and it was furnished in accordance with their agreement and became a part of the contract. The admissibility of the evidence does not depend solely upon the reference contained in the rider. The policy itself provides: "For further particulars reference is hereby

made to an application and survey, No. ——, furnished by
and a warranty on the part of the assured, *which is hereby
made a part of this policy."* The delay of the plaintiffs
in furnishing the survey should not be held to entirely
destroy its efficacy as a part of the contract. The fact
that the survey was not furnished until after the policy
was delivered may have deprived it of any force or effect
as a *warranty,* under section 2605 of the Civil Code; but
conceding this to be true, it does not destroy its effect as
a representation of facts made as an inducement for the
issuance of the policy; and as such it is evidence which
the jury should consider on the issue as to rescission. If
any of the material representations were false, the de-
fendant's tender of the premium and notice that the
policy was canceled before the commencement of the suit
operated to rescind the contract. (Civ. Code, secs. 2580,
2583.)

The policy as first printed and written contained this
clause: "It is understood and agreed that during such
time as the above mill is idle a watchman shall be em-
ployed by the insured to be in and upon the premises
day and night." At the request of the plaintiff this
provision was changed by inserting the word " about "
in lieu of the word "upon." The object of the change
doubtless was to avoid any controversy, in case of loss,
as to whether it was necessary that the watchman should
be actually upon the premises on which the insured
buildings stood. The change, however, did not accom-
plish the full purpose intended; for the watchman slept
a distance of three hundred or four hundred feet from
the mill; and the word " about," as used, is so uncertain
in signification that it cannot be determined therefrom
exactly what territory was intended to be covered by it.
But however uncertain the promissory warranty may be
as to the premises upon which the watchman was re-
quired to be, there is no ambiguity in the language with
respect to the. *time* he was required to watch the prem-

ises. Where the language of a policy may be understood in more senses than one, it is to be construed most strongly against the insurer, because he frames it, and is supposed to make it as potent as possible in his own favor; but where there is no imperfection or ambiguity in the language, it must be construed, like any other contract, according to the intention of the parties.

The court instructed the jury that "if the assured employed a watchman to be in and about the premises day and night while the mill was idle, then the plaintiff is entitled to recover," and submitted to them for determination the question whether plaintiffs had performed the conditions of the contract. Cases are cited by respondent in support of the action of the court which hold that under certain watchman clauses it is proper to receive evidence of usage and to submit to the jury the question whether the insured employed a watchman to look after the property in the manner in which men of ordinary care in similar departments of business manage their own affairs of like kind. But they all go off upon the proposition that the terms of the warranty are not explicit as to the time and manner of keeping a watch. Thus in the Massachusetts case, the language of the clause was, "a watchman kept on the premises"; and in the Illinois case, "a watchman to be on the premises constantly during the time until September 1, 1872." In the latter case plaintiff had employed a day-watchman and a night-watchman, and the only question considered was, whether it was necessary for the watchman to be actually on the premises on which the insured buildings were situated.

In the case before us the terms of the warranty are explicit as to the time of keeping a watch, and on the undisputed evidence we think the court ought to have held that the plaintiffs had not complied therewith.

The mill was idle for two months prior to the destruction thereof by fire, and the evidence shows that plain-

tiffs did not employ a watchman "to be in and about the premises day and night." A watchman was employed, but he was not instructed to watch the premises at night, and as a matter of fact, slept every night in a building distant three hundred or four hundred feet from the mill. Mr. Minear, the superintendent, testified that Mc-Murray, the watchman, was not instructed to watch the premises during the night; that his instructions were not special, "either at day or night." In the nature of things, it could not be expected that one man could watch the buildings day and night (only one watchman was employed); but if it be assumed that he could, no one was employed to do so. There is no ambiguity in the phrase "day and night." "We do not need a dictionary, nor a law book, nor the testimony of an expert, to tell us that a man who is employed to watch in the daytime, and who is permitted to sleep at night, is not a watchman at night." (Brooks v. S. F. Ins. Co., 11 Mo. App. 349; Glendale M. Co. v. P. I. Co., 21 Conn. 39; 14 Am. Dec. 309.) It is not a case of mere negligence. If a loss is occasioned by the mere fault or negligence of the watchman, unaffected by fraud or design on the part of the insured, it is within the protection of the policy; but to entitle the insured to recover, it must appear that he has in good faith employed a watchman to perform the duties required by the terms of the warranty. (Trojan Mining Co. v. Fireman's Ins. Co., 67 Cal. 27; Wenzel v. Commercial Ins. Co., 67 Cal. 438; Cowan v. Phœnix Ins. Co., 78 Cal. 181; Waters v. Merchants' etc. Ins. Co., 11 Pet. 219.)

It does not appear whether the watchman was actually on duty at the time the fire occurred. If the fact be considered as material, it is sufficient to say that defendant having shown the mill was idle, the burden of proving a compliance with the warranty rested upon the plaintiffs. (Cowan v. Phœnix Ins. Co., 78 Cal. 181; Wood on Fire Insurance, 2d ed., p. 1136.)

The judgment and order are reversed, and the cause is remanded for a new trial.

GAROUTTE, J., HARRISON, J., DE HAVEN, J., and MC-FARLAND, J., concurred.

BEATTY, J., concurring.—I concur in the judgment, and in the conclusion that the evidence does not show that a watchman was employed as stipulated.