[L. A. No. 17495. In Bank. Dec. 22, 1941.]

HOWARD W. BLACKBURN, Appellant, v. HOME LIFE INSURANCE COMPANY OF NEW YORK (a Corporation), Respondent.

Arthur Rosenblum and Fred Horowitz for Appellant

Loeb & Loeb, Herman F. Selvin and William Marshall Bullitt for Respondent.

EDMONDS, J.—The allegations of the appellant's complaint include the statement that he is suing on behalf of himself and on behalf of all others similarly situated holding policies issued by the respondent which provide for payment upon death and also for permanent disability benefits. He charges that the respondent has been guilty of unlawful discrimination by calculating and allowing dividends upon such policies at a lower rate than upon those which do not include disability benefits. Because of the respondent's practice in

this regard, he asserts that he is entitled to an accounting and a judgment for the amounts owing to him and other policy-holders as well as a declaration of the rights of the respective parties. The trial court denied relief, holding that the company's divisible surplus has been equitably apportioned.

Some years ago, the respondent, which is a mutual insurance company organized under the laws of New York, issued to plaintiff a policy of life insurance, No. 330,527, providing for a death benefit of $10,000. The semi-annual premium for this insurance is $163.40. At the same time, and in connection with the life policy, there was issued to the appellant what he refers to as an "additional and separate contract" providing for total and permanent disability benefits. By the added provisions, the insurer, for an additional semi-annual premium of $14.10, agreed to pay the appellant $100 monthly and to waive further premium payments upon the life insurance should he become totally and permanently disabled. The agreement to pay disability benefits is stated in what is known as a rider form which the insurer physically and permanently attached to the life insurance policy before its delivery to the appellant.

Subsequently, the insurer issued to the appellant three other policies of life insurance having disability riders, all substantially in form the same as the policy which has been described. Similar policies were also executed and delivered by the insurer to a large number of persons throughout the United States. The appellant states that his $10,000 policy is typical of all the policies and riders involved.

Prior to 1935, the insurer, in computing and paying dividends upon policies, made no distinction between policies providing solely for the payment of death benefits and those carrying the added feature of disability payments. It paid dividends upon each of such policies at the same rate. But in 1935 and 1936, the company adopted the practice of paying dividends at a higher rate upon policies providing for death benefits only than upon those which carried provisions for disability payments. This change was made because the insurer's experience showed that the policies for life insurance only were profitable, but the premiums charged for insurance against disability did not meet its cost. (*Rhine* v. *New York Life Ins. Co.,* 273 N. Y. 1 [6 N. E. (2d) 74, 108 A. L. R. 1197].)

The insurer recognizes that under the New York Insurance Law (sec. 89) the apportionment of divisible surplus must be equitable, and policyholders of the same class are entitled to share with equality in dividends. It asserts that the payment of dividends since 1935 has been in accordance with this principle. The appellant's case is based upon the theory that the disability rider attached to a policy of life insurance is a distinct contract, entirely separate from the contract of life insurance. Without the disability rider, the life policy is identical in form and kind with life insurance policies containing no provision for disability benefits and must, so his argument runs, be similarly classified for dividend purposes.

The parties have even more explicitly posited the question for decision for they agree that if the life insurance policy and the rider for disability benefits issued in connection with it are two separate and distinct contracts, the dividend classification adopted by the insurer is discriminatory; on the other hand, if they constitute but one integral contract of insurance, the policy is distinguishable from those lacking disability features, and the insurer has equitably apportioned its dividends.

█ Because contracts of insurance are not the result of negotiation and are generally drawn by the insurer, any uncertainties or ambiguities therein are resolved most strongly in favor of the insured (*Mah See* v. *North American Acc. Ins. Co.*, 190 Cal. 421 [213 Pac. 42, 26 A. L. R. 123]; 14 Cal. Jur. 443–445). █ Where there is no ambiguity, however, courts will indulge in no forced construction against the insurer, and the insurance policy, like any other contract, is to be interpreted according to the intention of the parties as expressed in the instrument in the light of the circumstances surrounding its execution (*Rankin* v. *Amazon Ins. Co.*, 89 Cal. 203 [26 Pac. 872, 23 Am. St. Rep. 460]; *Maryland Casualty Co.* v. *Industrial Acc. Com.*, 209 Cal. 394 [287 Pac. 468]; 14 Cal. Jur. 446).

█ Although neither the New York law nor the respondent's charter prohibits it from issuing separate contracts for disability insurance, the uncontradicted evidence is to the effect that no agreements to pay disability benefits have ever been issued by it except in connection with policies of life insurance. Also, such agreements, by their terms, may not

continue in force independently of the contracts for death benefits. In accordance with the New York Insurance Law, they have been either "printed in" as one of the clauses of the life insurance policy, or written as a "rider" or "supplementary contract" physically and permanently attached to the life policy.

By a single application, the appellant applied for a policy of life insurance "with" disability benefits. The insurer issued the policy as applied for, and the provision for disability benefits was contained in a rider form physically affixed to the policy .and captioned, "Contract for Total and Permanent Disability Benefit issued *in connection with and attached to* Policy No. 330,527 . . . on the life of Howard W. Blackburn." The policy, including the attached rider, describes itself several times, and always in the singular number as one policy. It is conceded that the agreement for disability benefits has no separate existence apart from the life insurance provisions. Appellant could not, by tendering the premium for the disability benefits only compel the respondent to continue separately its agreement to pay them unless he simultaneously paid the premium upon the life insurance. Also, the rider, standing alone, is incomplete and meaningless. Except by reference to the other provisions of the policy, it is impossible to determine many of the essential terms of the rider, such as the total amount of premium to be waived, the amount of monthly income payable in the event of disability, and the period of grace allowed for premium payment. Both by physical union and in legal effect, the policy and the disability contract constitute a single, unified agreement.

In all essential characteristics, this case presents the same question which has been considered by the New York courts. Deciding in favor of the insurer, which had issued a policy with a provision for disability benefits, the Appellate Division of the Supreme Court declared that it was "a single policy, with both death and disability benefits so interwoven as to constitute a single integral insurance contract." (*Rhine* v. *New York Life Ins. Co.*, 248 App. Div. 120 [289 N. Y. Supp. 117].) The Court of Appeals affirmed the judgment. (*Rhine* v. *New York Life Ins. Co.*, 273 N. Y. 1 [6 N. E. (2d) 74, 108 A. L. R. 1197].) A later case concerned a policy in substantially the same form as the one held by Blackburn,

that is, having the agreement for disability benefits in an attached rider, and the court said: "The theory on which plaintiff seeks to distinguish this action from the Rhine case is that the disability benefits pertaining to his life insurance policy are printed on the statutory 'rider form', entitled 'Supplementary Contract attached to and made part of' the policy, and pasted thereon, whereas in the Rhine case, they were printed as an integral part of the policy. The distinction, however, is one of form only. No difference exists between the two methods of including disability benefits in a policy of life insurance." (*Rubin* v. *Metropolitan Life Ins. Co.*, 251 App. Div. 382 [296 N. Y. Supp. 908]; affirmed, 278 N. Y. 625 [16 N. E. (2d) 293]; see also *Barnett* v. *Metropolitan Life Ins. Co.*, 258 App. Div. 241 [16 N. Y. Supp. (2d) 198]; affirmed, 285 N. Y. 627 [33 N. E. (2d) 554]; and *Burr* v. *Western States Life Ins. Co.*, 211 Cal. 568 [296 Pac. 273].)

█ The appellant attempts to avoid the controlling effect of these cases by the fact that the respondent has made certain changes in the language of its policy forms. Prior to 1921, the disability riders issued by the respondent contained language similar to the wording used in the rider attached to the policy held by the plaintiff in the Rubin case. They were then entitled, "Supplementary Agreement made a part of the Policy. . . . " After 1921, and during the time in which plaintiff obtained his policy, the rider was changed to read "Contract for Total and Permanent Disability Benefit issued in connection with and attached to Policy No. ——." The appellant argues that the deletion of the words "made a part of" indicates an intention on the part of the insurer to separate the disability contract from the life insurance policy, and particularly to avoid application to the disability contract of the provision making the policy incontestable after two years. No such legal significance may be attributed to such a trifling change in wording. Moreover, the New York Insurance Law expressly provides that " . . . rider forms . . . shall be deemed to be parts of policies. . . . " (Section 101 [10].)

█ The fact that the rider containing the provisions for disability insurance was separately executed does not aid the appellant; this is required by the Superintendent of Insurance of New York. Nor does the fact that the premium

for the disability contract is separately stated and is not combined with the premium for the life policy compel a determination that the insurer made two contracts. True, in the Rhine case the policy exacted a total premium for both death and disability benefits, and the court, in holding the disability clause to be a supplementary and not an independent agreement, relied partially upon the singleness of the premium, stating that a "totality of the promises is given for the total premium." This provision, however, was only one of many which the court considered in construing the policy. Certainly it is not of controlling importance because the regulations of the Superintendent of Insurance allow an insurer to state separately the premiums for death and disability benefits.

Nor is the disability rider an independent contract because the benefits provided therein may be discontinued by the policyholder without terminating the death benefit provisions of the policy. As stated in the Rhine case, *supra*, because he may do so, "the disability feature of the policy is indeed severable, but it is severable for the purpose of being terminated, and until the privilege of dropping the disability benefit is exercised . . . the policy with the various promises therein contained is a single policy and may for dividend purposes be dealt with as a whole."

Other minor differences between the Rhine and Rubin policies and the Blackburn policy are pointed to by the appellant as warranting a construction that the insurer issued two separate contracts but they do not support such an interpretation. Also, the cases of *Legg* v. *St. John*, 296 U S. 489 [56 Sup. Ct. 336, 80 L. Ed. 345]; *Southland Life Ins. Co.* v. *Johnston* (Tex. Civ. App.), 97 S. W. (2d) 518; and *Chattanooga Sewer Pipe Works* v. *Dumler*, 153 Miss. 276 [120 So. 450, 62 A. L. R. 999], relied upon by Blackburn, were decided upon facts wholly different from those which are presented by the record upon this appeal and they are therefore not in point.

The present case is not the usual contest between an insurance company and a policyholder. The respondent, in good faith and in the exercise of a reasonable discretion, has apportioned and paid dividends in a manner which has received the express approval of the Superintendent of Insurance of New York. The courts of that state have sanc-

tioned the method of classification which it adopted and there is sound reason as well as statutory authority for it.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Curtis, J., Houser, J., Carter, J., and Traynor, J., concurred.