Appellate Department, Superior Court, Fresno

[Civ. A No. 17. Mar. 1, 1954.]

LOWELL M. CHRISTOFFER, Respondent, v. HARTFORD ACCIDENT AND INDEMNITY COMPANY (a Corporation) et al., Appellants.

Ray W. Hays and James N. Hays for Appellants.

John Said for Respondent.

KELLAS, J.—The facts are agreed to by all parties. On the 20th day of December, 1951, appellants issued an automobile insurance policy to one Nora Lee Haskins, as the owner of a 1949 Crosley station wagon. Such policy contained the following insuring agreement:

"COVERAGE C—Medical Payments

"To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, ambulance, hospital, professional nursing and funeral services, to or for each person who sustains bodily injury, sickness, or disease, caused by accident, while in or upon, entering or

alighting from the automobile if the automobile is being used by the Named Insured or with his permission."

On the 9th day of July, 1952, respondent, brother of the assured, obtained her permission for the use of the car on the following day, purposing to go to Tracy. He departed on the trip as planned, but en route suffered an accident from which resulted his injuries. Respondent has no recollection of events transpiring between a point some distance beyond Merced, California, at which point he had stopped at a service station, and the time when he regained consciousness in the hospital. However, an eyewitness to the accident established the following facts: That at a point $1\frac{1}{2}$ to 2 miles east of Livingston on Highway 99, said highway at such point being a divided highway with two west bound lanes, and having a 6 or 8-foot asphalt shoulder, respondent was seen "in a bent kneed position on his haunches near the left rear wheel" of the Crosley, which was parked about 6 inches off the northerly shoulder. ██ "Respondent had his hands on the wheel, apparently either taking it off or putting it on." (Appellant's Opening Brief, page 2, lines 22 and 23.) At this time respondent and the Crosley were struck by an automobile approaching from the rear, which swerved to the right side of the road to accomplish contact. Claim was regularly made upon the appellants under the above quoted provision of the insurance policy, which was rejected. Action was then filed and judgment rendered in favor of respondent for Two Thousand Dollars ($2,000.00), the maximum coverage therefor, it appearing that the medical expenses incurred by him as a result of personal injuries suffered exceeded that amount.

Appellants contend that the facts, as presented to the trial court, do not place the respondent "upon" the automobile as that word is employed in Coverage "C." Respondent contends to the contrary. In seeking the answer to the question posed, the general rules governing the interpretation of contracts should be kept in mind. Pertinent sections are as follows:

Section 1636, Civil Code: A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.

Section 1638, Civil Code: The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.

Section 1643, Civil Code: A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties.

Section 1644, Civil Code: The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed.

Since the respondent could not in any view be said to be "in," "entering, or alighting" from the Crosley, we are then concerned only with the meaning of the word "upon" as used in the context of Coverage "C" governed by the above principles. Appellants state that " 'upon the automobile', as used here can only mean just what it says, that coverage existed when the injured person was above or on top of and being supported by the automobile." (Line 23, page 6, Op. Bf.)

We agree with appellant that there is no ambiguity in the term "upon" as it is here employed and that it should be given the meaning ordinarily accepted in everyday speech and, this being true, respondent is not entitled to the benefit of the rule which gives the assured the benefit of an interpretation against the insurer where an ambiguity exists. We believe the proper rule is set forth in the case of *New Amsterdam Cas. Co.* v. *Fromer,* 75 A.2d 645 at 646:

"Viewed in their context and applied to the instant facts we think the words 'while in or upon, entering or alighting' are plain and unambiguous, and that the trial court erred in holding otherwise. Hence the case must be tested and decided according to the ordinary meaning that common speech imports, and not by resort to the rule of liberal construction."

See, also, *Ross* v. *Protective Indem. Co.,* 135 Conn. 150 [62 A.2d 340] ; *Katz* v. *Ocean Acc. & Guar. Corp.,* 112 N.Y.S.2d 737 at 739.

The general rule is set forth in the case of *National Automobile Ins. Co.* v. *Industrial Acc. Com.,* 11 Cal.2d 689, at 691 [81 P.2d 926], as follows: "A contract of insurance, like any other contract, is to be construed so as to effectuate the intention of the parties. Of course, if any ambiguity exists in its terms it is to be interpreted against the insurer and in favor of the assured. But where, as here, the provisions of the policy are definite and certain there is no room for

interpretation and the courts will not indulge in a forced construction in order to cast a liability upon the insurer which it has not assumed.''

See also *Perkins* v. *Fireman's Fund Indem. Co.*, 44 Cal. App.2d 427 [112 P.2d 670] ; *Blackburn* v. *Home Life Ins. Co.*, 19 Cal.2d 226 [120 P.2d 31] ; *Baine* v. *Continental Assur. Co.*, 21 Cal.2d 1, at 5 [129 P.2d 396, 142 A.L.R. 1253].

The word ''upon'' is defined in part by Webster's New International Dictionary, second edition, unabridged, 1948, as follows:

''Upon—on :—in all its senses see on.''

And turning to the word ''on,'' one finds the following definition:

''On—The primary signification of *on* is position of contact with or against a supporting surface, or motion into or toward such position.

''1. Indicating position over and in contact with that which supports from beneath; as, the book lies *on* the table; . . . to swear (with hands) *on* the Bible; to ride *on* a train (where British usage has *in*) ; passage *on* an ocean liner (where nautical usage has *in*) ; also, specif., at, in, or along the surface of; over the projecting edge or point of; in or about the clothing of; as not a mark *on* it; hung *on* a nail; a pistol was found *on* him.

''2. Indicating contiguity or dependence; (a) Contact and support from elsewhere than beneath; as, a fly *on* the ceiling; hanging *on* the wall. (b) Contiguity or juxtaposition; as, a town situated *on* the river; to live *on* Walnut Street (where British usage often has *in*) ; . . .''

 It is obvious from the above definition that the hands of respondent were ''upon the wheel'' of the automobile, and hence ''upon the automobile'' just as the hands of the engineer are said to be ''upon the throttle'' or a driver's hands ''upon the brake,'' or as the farmer's hand is ''upon the plow,'' and this would be true whether the tire was grasped by him from above, from below, or from the sides thereof. The determinative point in this case, therefore, is whether the respondent himself can be said to be upon the automobile. Since there are no exceptions, exclusions, restrictions, or qualifications contained within the policy as to how or in what manner the assured was to be upon the automobile (such as standing upon, sitting upon, kneeling upon, pushing upon, pulling upon, riding upon, resting upon, etc.), we conclude that respondent was ''upon the automobile'' as the

term is employed in the policy, just as a fly is said to be "upon the wall" or "upon the ceiling," or a painter is said to be "upon the wall," a person to be "upon a raft" although only supported by the hand, or as a baseball player (the runner) is said to be "upon the base" if any portion of his body is in contact with the bag. Everyday speech refutes the statement that the word "upon" is confined to the meaning of "on top of." The dog is "upon the leash"; the man is "upon the rope." It is this meaning of the word "upon" which we believe the parties had in mind in the preparation of Coverage "C" of the contract. It is the meaning set forth by Webster's wherein the position of contact is against the supporting surface rather than above it, or position of contiguity wherein contact and support is from elsewhere than beneath.

Excluding those positions wherein one can be said to be "in," "entering," or "alighting from" the automobile, the word "upon" would become meaningless to restrict it to the meaning assigned it by appellants. We must assume that it was the intention of the parties to the contract to include a class of persons within the meaning of the word "upon" not necessarily included in the words "in," "entering," or "alighting from." As pointed out by the court in the case of *Goodwin* v. *Lumbermen's Mut. Cas. Co.*, 199 Md. 121 [85 A.2d 759], "the terms are not synonymous although sometimes two of them may cover the same situation." One would not expect to find a person wholly above the top, the fenders, the hood, or the bumpers if the car were being lawfully used. Where, then, would one expect to find him to give the word "upon" meaning, adopting the meaning thereof as taken from Webster's and everyday speech? To give it the restricted meaning of "on top" is a strained interpretation and tends to take from the agreement the force and coverage intended. We do not believe it should be a restricted meaning, neither do we hold that it should be given the loose meaning suggested by respondent wherein it connotes being adjacent or near, e.g., "on the rail" (horse racing), "on 'B' Street" (a house); nor should we read something into the contract which, in fact, is not there. For this reason the cases of *Lokos* v. *New Amsterdam Casualty Co.*, 93 N.Y.S.2d 825; *Sherman* v. *New York Casualty Co.*, 78 R.I. 393 [82 A.2d 839], *Madden* v. *Farm Bureau Mut. Auto. Ins. Co.*, 82 Ohio App. 111 [79 N.E.2d 586], are not in point because, as

appellants have pointed out, the words in question there are tied to the word "use."

In the case of *Goodwin* v. *Lumbermens Mut. Cas. Co.*, *supra*, the court was construing a policy of the same language as here employed. In that case, Mrs. Blum, one of the plaintiffs, was standing on the street adjacent to the right front door of the automobile in question and, after opening the right front door with a key, leaned in the car and reached around for the purpose of releasing the tab so that the rear right hand door could be opened. The court held that Mrs. Blum was *upon* the car as well as entering it and liability was assessed accordingly. In the case of *Katz* v. *Ocean Acc. & Guar. Corp.*, *supra*, another case in which the court was construing the exact phraseology we have here, the court held (and such decision was affirmed on appeal) where the plaintiff "alighted from the automobile and was in the act of locking the car with her hand upon the door when suddenly she ran from a point where she was standing adjacent to the left front door of the vehicle and to the rear of the car" at which point she received her injuries from an oncoming car, that she was *upon* and *alighting from* plaintiff's vehicle. In this case, the court had placed the victim in the original position in which she was when she discovered her unfortunate plight.

The judgment should be, and is, therefore, affirmed.

Shepard, P. J., and Conley, J., concurred.