**METROPOLITAN LIFE INSURANCE COMPANY, a corporation,** Appellant,

v.

**Margaret L. GRANT, Appellee.**

No. 16130.

United States Court of Appeals Ninth Circuit.

June 16, 1959.

Hamlin, Circuit Judge, dissented.

Knight, Boland & Riordan, Burton L. Walsh, John J. Quigley, San Francisco, Cal., for appellant.

Wyckoff, Parker, Boyle & Pope, Harry F. Brauer, Philip T. Boyle, Watsonville, Cal., for appellee.

Before POPE, ORR and HAMLIN, Circuit Judges.

ORR, Circuit Judge.

Peter Grant, now deceased, on the 11th day of August, 1954 made application to appellant, Metropolitan Life Insurance Company, on a form furnished by it, for a policy of life insurance. The application was delivered to an agent of the appellant with Part A relating to the applicant's situation filled out, along with a check in payment for the first full month—

ly premium. Applicant Grant was told by the agent of appellant that he would need a medical examination as covered by Part B of the application, and it was agreed that applicant Grant would call Dr. Blaisdell, appellant's examining physician, to arrange an appointment. An appointment was made but applicant Grant died before he could be examined on August 13, 1954, as a result of an accident.

The widow of applicant Grant, the beneficiary named in the application for insurance, in due time made demand for payment of the insurance. Appellant refused payment upon the ground that at the time of the death of Peter Grant it was under no obligation to pay insurance.

 While numerous specifications of error are set forth dealing with alleged errors in admissions and exclusions of evidence and the making of incorrect findings in the trial court, such alleged errors do not relate to matters relevant to the controlling question, viz.: should the provisions of the application made by Peter Grant be construed to provide him insurance during the interval between the acceptance of the application with first monthly premium and final approval at the home office? [1]

A solution of the question presented requires, of course, the construction of the language used. The law governing the construction is that of California and the Supreme Court of that state has had occasion to pass upon the meaning and effect to be given a provision in an application very similar to that contained in the application with which we are concerned in the instant case. Ransom v. The Penn Mutual Life Insurance Co., 1954, 43 Cal.2d 420, 274 P.2d 633. In that case the claimant made application for insurance and paid the first full premium. He had a medical examination by his doctor, the results of which caused the company to request further examination. Before that could be arranged the claimant was killed in an accident. The question for decision as stated by the court was "whether a contract of insurance arose immediately upon receipt by defendant of the completed application with the premium payment, subject to the right of defendant to terminate the agreement if it subsequently concluded that Ransom was not acceptable, or whether, as defendant contends, its satisfaction as to Ransom's acceptability for insurance was a condition precedent to the existence of any contract." 274 P.2d at page 634.

The court considered two lines of decision in similar cases from other jurisdictions that involved numerous variations of the same basic situation of ap-

1. There is one possible exception. Error is claimed in the failure of the trial court to find that the check was returned to Mrs. Grant and no tender of it has since been made. The record indicates that agent Price came to Mrs. Grant the day after her husband's death while she was still suffering under the shock of the sudden death of her husband and while under sedation. Amidst the excitement of a house full of mourning relatives agent Price entered the house, handed Mrs. Grant the check previously given him for the premium four days earlier and stated: "I never put it in the bank. I never deposited it. So the insurance is not in force." He asked her for the receipt that he had given them and requested that she sign some papers. She stated that she did not know where the receipt was and did not want to sign anything. He stated: "Well, if you will sign these we will advance you money." She refused and he left, leaving the check behind. The premium has not been tendered since. In that state of the record the trial court was completely justified in refusing to find that Mrs. Grant "accepted" the check back under conditions of such unconscionable overreaching on the part of the agent of appellant. In any event there was or was not insurance coverage in effect at the time of Grant's death. The subsequent act of returning the premium is irrelevant. No contention has been made that the premium was accepted as a satisfaction of the liability under the contract. When appellant returned the check and unequivocally disclaimed liability, no further tender was necessary as it would have been futile. See Hossom v. City of Long Beach, 1948, 83 Cal.App.2d 745, 189 P.2d 787.

plications for insurance accompanied by payment of the first premium where applicant's death occurred before approval by the home office. In the opinion no attempt is made to draw fine distinctions from the various phraseology used in the numerous policies in relying upon the line of cases holding that there was interim coverage in force until the company terminated it, or issued a policy. The court said "the understanding of an ordinary person is the standard which must be used in construing the contract, and such a person upon reading the application would believe that he would secure the benefit of immediate coverage by paying the premium in advance of delivery of the policy. There is an obvious advantage to the company in obtaining payment of the premium when the application is made, and it would be unconscionable to permit the company, after using language to induce payment of the premium at that time, to escape the obligation which an ordinary applicant would reasonably believe had been undertaken by the insurer. Moreover, defendant drafted the clause, and had it wished to make clear that its satisfaction was a condition precedent to a contract, it could easily have done so by using unequivocal terms. While some of the language tends to support the company's position, it does no more than produce an ambiguity, and the ambiguity must be resolved against defendant." 274 P.2d at page 636.

█ Appellant argues that the language in the policy application presently before us is different from the language in the policy application considered by the California Supreme Court and contains no ambiguity. As we have said, the California Supreme Court did not approach the problem as one dealing with fine niceties of terminology. We feel justified in making a like approach. The language used in the insurance application before us is similar in import to the language appearing in the application in the Ransom case. In each application there is language indicating that the insured need not pay the premium immediately in which case no insurance would be in effect until the policy was delivered and the premium paid. On the other hand there is language in each indicating that the premium could be paid at the time of application in which case insurance would date from that time. The language appearing in the Ransom case application is:

"If the first premium is paid in full in exchange for the attached receipt signed by the Company's agent when this application is signed the insurance shall be in force, subject to the terms and conditions of the policy applied for, from the date of Part I or Part II of this application, whichever is the later, provided the Company shall be satisfied that the Proposed Insured was at that date acceptable under the Company's rules for insurance upon the plan at the rate of premium and for the amount applied for, but that if such first premium is not so paid or if the Company is not satisfied as to such acceptability, no insurance shall be in force until both the first premium is paid in full and the policy is delivered * * * "

The language in the policy application in the instant case is:

"The company shall incur no liability under this application until a policy has been delivered and the full first premium * * * paid * * * in which case such policy shall be deemed to have taken effect as of the date of issue as recited therein, except as follows: If an amount equal to the full first premium on the policy applied for is paid to and accepted by the Company at the time Part A of this application is signed and if this application is approved at the Company's Home Office for the class, plan, and amount of insurance herein applied for, then the insurance in accordance with the terms

of the policy applied for shall be in force from the date hereof."[2]

Appellant argues that the fact that the Ransom application in stating conditions uses the term *provided* and the application present here uses the term *if* distinguishes the two cases on the basis that the *if* language is that of a condition precedent whereas the *provided* language is that of a condition subsequent. We are unable to agree with such a distinction. As previously mentioned, the California Supreme Court considered two lines of cases dealing with numerous variations of terminology but made no attempt to bottom its opinion on differences in such terminology. It referred to taking premiums in advance as unconscionable if no immediate interim coverage is provided. It quoted with approval cases stating that it would not be dealing honestly with the insured to accept premiums without interim coverage.

The same ambiguity present in Ransom as to what it means for insurance to be effective from the date of the policy application if some further acts of the company are required is presented to us. Appellant seeks to explain the function of the language of relation back by showing that the premium is based on the age of the applicant at the time of the application rather than at the time of the approval by the home office which is an advantage to the applicant if he pays the premium in advance. That result could be indicated by much clearer language thus eliminating the ambiguity present in the language actually used and thus avoid leading the layman into believing that coverage was in force from the day of application when the premium was paid in advance. Appellant seems to have difficulty with the interpretation of the language itself as it stated in its brief and repeated on oral argument that

if the applicant had become sick during the time before final approval he would be covered. We cannot understand how the language used differentiates between intervening mortal sickness and death.

The set up in the application reasonably presents a picture to an applicant that two stages are present. First pay the portion of the premium required in advance and in consideration thereof you will have protection until your application is accepted or rejected. Second, if appellant accepts the risk a policy will be issued in due course.

Basing our assumption on the Ransom case, we think that under the circumstances of this case the Supreme Court of California would reach the conclusion that interim insurance was in force and effect from the time of the receipt by appellant's agent of the application and check were this case presented to them for decision.

Affirmed.

POPE, Circuit Judge.

I concur. The court divides on the question whether the words: "and if this application is approved at the Company's Home Office" etc., state a condition precedent or only a condition subsequent. Ransom v. The Penn Mutual Life Insurance Company, 43 Cal.2d 420, 274 P.2d 633, 636, held that similar language in that policy was not a condition precedent. I am satisfied that the California Court, were it ruling on this policy, would say that the language just quoted stated a condition subsequent. As the California Court said of that Company: "had it wished to make clear that its satisfaction was a condition precedent to a contract, it could easily have done so by using unequivocal terms." If the approval of the application is a condition subsequent, it can not matter whether the final approval

---

**2.** The language in the receipt given for the premium is even more indicative for immediate coverage. It states: "If the sum collected at the time Part A of this application is signed is at least equal to the full first premium on the policy applied for and if such application is approved at the Company's Home Office for the class, plan, and amount of insurance therein applied for, then the insurance in accordance with the terms of the policy applied for shall be in force from this date * * *." This language is the only underlined language in the receipt.

mentioned relates to all three parts of the application.

What most definitely convinces me that the California Court would reach this result on these facts is its clearly expressed approval in Ransom of the decision in Gaunt v. John Hancock Mutual Life Ins. Co., 2 Cir., 160 F.2d 599, 601–602. There the language of the application was substantially the same as that which was used here.[1]

I am impressed by Chief Justice Gibson's statement: "There is an obvious advantage to the company in obtaining payment of the premium when the application is made." Clearly enough many an insurance applicant, after he has cooled off, might change his mind and never go for a medical examination. It seems to me the provision for immediate payment of the premium was a deliberate device for minimizing the likelihood of such a change of mind. To obtain its advantages the company, I am satisfied, took a calculated risk. I think, as Chief Justice Gibson said, it would be unconscionable to permit the company to escape the obligation thus undertaken by it.

HAMLIN, Circuit Judge.

I respectfully dissent. The Ransom case cited in the opinion was based on different language in the application than the language found in the instant case. In Ransom, the California court held that the language used was ambiguous and that "the ambiguity must be resolved against defendant."

In the instant case I see no ambiguity.

The application contained Parts A, B, and C. Part A was signed by the applicant, in which he made application for a certain type of insurance and in which he gave his occupation as an airplane crop duster and answered other questions asked by the Company. Part B is to be filled out by the applicant in the presence of the medical examiner. It is designated at the top "Applicant's Statements to the Medical Examiner." Part C is entitled "Medical Examiner's Report on .........." and is to be signed by the medical examiner at the completion of the applicant's medical examination. These three parts of one document comprise "the application." They are all portions of *one* piece of paper, which piece of paper was exhibited to the Court.

In the instant case there was no evidence of any statement by the agent that the applicant was covered when he signed Part A. He was told to arrange for a medical examination. No medical examination was had, the applicant having been killed in an airplane accident in the course of his occupation on the morning of the day on which an appointment for a medical examination had been scheduled.

Parts B and C of the application thus were never filled out. Part A of the application, which had been signed by the applicant, stated:

"4. The Company shall incur no liability under this application until a policy has been delivered and the full first premium specified in the policy has actually been paid to and accepted by the Company during the lifetime and continued insurability of the applicant, in which case such policy shall be deemed to have taken effect as of the date of issue as recited therein, except as follows: If an amount equal to the full first premium on the policy applied for is paid to and accepted by the Com-

---

[1]. That case is even stronger than the present one, for in the application in Gaunt there were two "ifs," not just one. There the words were: *"if* the Company is satisfied that on the date of the completion of Part B of this application I was insurable * * * and *if* this application * * * is, prior to my death, approved by the Company at its Home Office, the insurance applied for shall be in force as of the date of com-

pletion of said Part B." (Emphasis mine.)

Nor can the instant case be distinguished from Gaunt on the ground that Gaunt had taken his physical examination prior to his death while Grant had not. The coming into effect of the insurance here was conditioned only upon the signing of Part A and the payment of the first full premium.

312

pany at the time Part A of this application is signed and *if this application* is approved at the Company's Home Office for the class, plan and amount of insurance herein applied for, then the insurance in accordance with the terms of the policy applied for shall be in force from the date hereof." [Italics mine.]

The receipt, given by the agent at the time Part A was signed by the applicant, stated:

"If the sum collected at the time Part A of this application is signed is at least equal to the full first premium on the policy applied for and *if such application* is approved at the Company's Home Office for the class, plan, and amount of insurance therein applied for, then the insurance in accordance with the terms of the policy applied for shall be in force from this date, but otherwise no insurance shall be in force under said application unless and until a policy has been delivered, and the full first premium specified in the policy has actually been paid to and accepted by the Company during the lifetime and continued insurability of the applicant." [Italics mine.]

In addition to the fact that no medical examination was ever had, the application (which consists of Parts A, B, and C) was never "approved at the Company's Home Office for the class, plan, and amount of insurance * * * applied for * * *." In fact, the application never even reached the Home Office.

To me, the language in Part A and in the receipt is clear and explicit. It provides for certain conditions to be fulfilled before the policy is in effect. These conditions were not fulfilled.

The Ransom case, supra, cites and relies on Gaunt v. John Hancock Mut. Life Ins. Co., 2 Cir., 1947, 160 F.2d 599. While the language in the Gaunt application differs somewhat from the Ransom case, it also differs from the language in this case. The Court said, in Gaunt, "The

important words were: 'if the Company is satisfied that on the date of the completion of Part B of this application I was insurable * * * and if this application * * * is, prior to my death, approved by the Company at its Home Office, the insurance applied for shall be in force as of the date of completion of said Part B.' "

Also, the facts in the Gaunt case are far different from this case. In Gaunt, a medical examination was had, which Gaunt passed. A second medical examination was taken by Gaunt, which Gaunt again passed. A medical examiner at the Home Office "approved the 'application.' " Apparently the Company was satisfied that Gaunt was "insurable." The judge found that if Gaunt had lived, the "Home Office" would have approved the "application." It appeared that nothing further need be done but the ministerial act of issuing the policy.

The Court said in Gaunt: "The important question is how far the condition of subsequent approval shall prevail over the promise of immediate coverage as soon as the insured has paid his premium and *has passed his physical examination.*" [Emphasis added.]

The case turned on the belief of the applicant "who has paid his first premium and had successfully passed his physical examination" that he had immediate coverage.

These are not the facts in the instant case, nor is the language used by the Company the same in this case.

In this case there was no promise of immediate coverage (as there was in Gaunt); no physical examination was ever taken (as there was in Gaunt and Ransom); the application was not completed (as it was in Gaunt and Ransom); and, the application never reached the Home Office (as it did in Gaunt and Ransom).

Granting that ambiguities should be construed in favor of the insured, I feel that the California cases hold that

"Where there is no ambiguity, however, courts will indulge in no

forced construction against the insurer, and the insurance policy, like any other contract, is to be interpreted according to the intention of the parties as expressed in the instrument in the light of the circumstances surrounding its execution." Blackburn v. Home Life Ins. Co., 19 Cal.2d 226, 229, 120 P.2d 31, 32; Rankin v. Amazon Ins. Co., 89 Cal. 203, 26 P. 872, 23 Am.St.Rep. 460; Maryland Casualty Co. v. Industrial Acc. Comm., 209 Cal. 394, 287 P. 468; Metts v. Central Standard Life Ins. Co. of Illinois, 142 Cal.App.2d 445, 298 P.2d 621.

I would reverse.