[Civ. No. 27322. Second Dist., Div. One. Dec. 10, 1963.]

WILLIAM SIDNEY BRUNT, Plaintiff and Respondent, v. OCCIDENTAL LIFE INSURANCE COMPANY OF CALIFORNIA, Defendant and Appellant.

Gibson, Dunn & Crutcher, Frederic H. Sturdy and John H. Sharer for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

LILLIE, J.—Plaintiff sought a declaratory decree that defendant be held liable under a sickness and accident insurance policy for which he applied on August 21, 1961. At that time he tendered the sum of $5.46 and was given a receipt therefor, made subject to certain conditions. Eight days later, before the policy issued, he sustained a broken pelvis when he fell down a flight of steps. Judgment was for plaintiff after trial on a written stipulation of facts, and defendant has appealed. The single problem presented is whether the conditional receipt given to plaintiff created a contract of interim insurance pending acceptance of the application or approval of the risk.

Plaintiff has not filed a brief on appeal. His trial counsel, by letter, state that their client is an indigent and without funds to finance an appearance in this court; they further state that plaintiff's actual pecuniary interest in the outcome of the instant litigation is so small that he would never consider expending the sums required. Without wishing to censure counsel, sometimes the economics of the situation must yield to the truism that, ''[I]t is as much the duty of the respondent to assist the court upon the appeal as it is to properly present a case, in the first instance, in the court below'' (*Mosher* v. *Johnson*, 51 Cal.App. 114, 116 [196 P. 84]); particularly is this true when respondent's counsel recognize (as here) that ''an issue of substantial public interest'' is involved. With that observation, we pass to the merits.

 The following facts were stipulated: On or about August 21, 1961, plaintiff applied to defendant for the policy in question. He tendered the amount equivalent to the first month's premium ''of such proposed policy, if as and when

the same might be issued." Defendant thereupon issued its written receipt for said payment, and plaintiff accepted the same.

The subject receipt reads as follows:

"Received from William Sidney Brunt, Applicant, the sum of $5.46 on account of the proposed insurance in accordance with the application bearing the same number as this receipt. This payment is made and accepted subject to the conditions printed on the reverse side hereof. This receipt is not valid unless signed by a licensed agent, nor unless the remittance, if tendered by check or draft, is honored on first presentation for payment."

And on the reverse side:

"If the payment specified on the reverse side hereof is equal to the whole amount of the first premium on the policy applied for, and if the applicant and eligible members of the family, in the opinion of the Company's authorized officers in Los Angeles, were on the date of the payment insurable and acceptable as a standard risk under its regular underwriting practices and standards for the policy as applied for, the policy will be dated and made effective as of the date of the payment in accordance with its provisions; otherwise, there shall be no liability on the part of the Company, except to return the payment to the applicant upon surrender of this receipt."

The parties also stipulated to the following facts: Defendant does not claim any fraud or misrepresentation on plaintiff's part in his application; neither party claims any ambiguity in the terms of the subject receipt; plaintiff's accident, his subsequent claim and its denial by defendant were not material issues; subsequent to August 21, 1961, and prior to September 30, 1961, defendant's authorized officers in Los Angeles "acting in good faith and in the regular and normal course of business were not able to arrive at the opinion that the applicant (plaintiff) was on the date of the tender of said $5.46 insurable and acceptable as a standard risk under defendant's regular underwriting practices and standards for the policy as applied for, and in fact the said officers of defendant in Los Angeles in the regular and normal course of business and in good faith during said period have arrived at just the opposite opinion"; prior to September 30, 1961, defendant notified plaintiff of the foregoing opinion, his application was accordingly declined and on September 19, 1961, defendant tendered back said $5.46 to the plaintiff.

The parties' respective contentions below were also stipulated: Plaintiff contends that defendant could not accept from plaintiff the sum tendered and thereafter, despite the terms and conditions of the receipt and notwithstanding the company's good faith provision as to insurability, reject his application and refuse to assume liability for the losses he assertedly sustained. Defendant, on the other hand, claims that it could and did properly accept the sum tendered pursuant and subject to the conditions set forth in the receipt; having found that plaintiff was not acceptable as a standard risk under its regular underwriting practices, defendant was not required to assume liability or issue the policy applied for.

The foregoing stipulated facts, including the parties' respective contentions, were adopted by the trial court in its findings. Therefrom conclusions of law were drawn that plaintiff's contentions were well taken, that defendant's contentions were not correct and that defendant is liable for losses sustained by the asserted accident eight days later with the same force and effect as though a policy as applied for earlier had been in effect on the date of the accident. It was also concluded that while defendant had the power to reject plaintiff's application (and thereafter refuse to issue a policy) and did properly exercise such power, such rejection could not be exercised so as to permit defendant to deny liability for any injury sustained prior to said rejection.

As mentioned earlier, there is a single problem presented on this appeal; but it has been observed by the annotator (2 A.L.R.2d 943, 960) that the state of the law on this single point is ''anarchical.'' Concluding the same (and very exhaustive) annotation there is this editorial comment: ''It is the contention of the annotator that the existing conflict of authority is not in fact due to differences in legal theory but that it has a much more deeply rooted reason. It is submitted that the existing conflict actually is a reflection of differences of opinion entertained by the courts as to the extent to which social interest in the freedom of contract and in the security of transactions entered into should be permitted to be outweighed by the interest of society to protect, in a case where the parties to a contract have unequal bargaining power, the one party who, because of his inferior bargaining strength, must either accept what is offered or be deprived of the advantages of the relation, against unduly oppressive or excessive conditions forced upon him by the party superior in bargaining power.'' (Pp. 1019.) Cases reflecting the above

divergent views are cited in *Ransom* v. *Penn Mut. Life Ins. Co.*, 43 Cal.2d 420 [274 P.2d 633], on which decision plaintiff relied below.

Defendant contends that there are certain factual differences in the *Ransom* case and, therefore, it is not controlling. It was there held that the language used in the application stated a *condition subsequent* rather than a *condition precedent*.[1] In this connection, the court declared that "had [the company] wished to make clear that its satisfaction [as to the applicant's insurability] was a condition precedent to a contract, it could easily have done so by using unequivocal terms." (43 Cal.2d 420, 425.)

It is first argued that the *Ransom* decision was based in part upon the fact that the language used was ambiguous, whereas in the instant case the parties "have stipulated" (and the trial court found) that there was no ambiguity in the document. It is problematical whether the parties could validly so stipulate (83 C.J.S. 14-15). ■ " 'When a particular legal conclusion follows from a given state of facts, no stipulation of counsel can prevent the court from so declaring it.' [Citations.]" *(Duncan* v. *Garrett,* 176 Cal.App.2d 291, 294 [1 Cal.Rptr. 459].) ■ Too, the question as to whether the contract is ambiguous is one of law for the trial court in the first instance; but its determination in that regard is not binding on appeal. *(Brant* v. *California Dairies, Inc.,* 4 Cal.2d 128, 133 [48 P.2d 13].) ■ A contract is ambiguous when on its face it is capable of different reasonable constructions. *(Woodbine* v. *Van Horn,* 29 Cal.2d 95, 104 [173 P.2d 17].) ■ Since, for reasons hereinafter stated, it is concluded that the subject receipt belongs in that category, defendant's argument may not be considered tenable.

---

[1] The clause in question is quoted in the opinion: "If the first premium is paid in full in exchange for the attached receipt signed by the company's agent when this application is signed the insurance shall be in force, subject to the terms and conditions of the policy applied for, from the date of Part I or Part II of this application, whichever is the later, provided the Company shall be satisfied that the Proposed Insured was at that date acceptable under the Company's rules for insurance upon the plan at the rate of premium and for the amount applied for, but that if such first premium is not so paid or if the Company is not satisfied as to such acceptability, no insurance shall be in force until both the first premium is paid in full and the policy is delivered while the health, habits, occupation and other facts relating to the Proposed Insured are the same as described in Part I and Part II of this application and in any amendments thereto."

Defendant next calls attention to the fact that the *Ransom* application refers to "the first premium" being "paid in full"; by contrast, the present instrument does no more than acknowledge the sum of $5.46—"nowhere," says defendant, is it "characterized as a 'premium.'" That likewise may be true, but defendant has stipulated (as noted earlier) that the sum tendered was "an amount equivalent to the premium for the first month of such proposed policy."

A third distinction between the two documents, according to defendant, is the use of the word "proposed"—the receipt in the present case stating that the $5.46 was being received "on account of the *proposed* insurance." It seems, however, that the word "proposed" was also used in the *Ransom* application. Its presence is not disclosed in the opinion of the Supreme Court; however, the clause in which it appears is quoted in the earlier opinion by the District Court of Appeal (274 P.2d 633, 634): "... provided the Company shall be satisfied that the *Proposed* Insured was at that date acceptable under the Company's rules for insurance ..." (Italics added.) If the present argument was ever advanced, it apparently was brushed aside upon the theory, as observed in a later case, that "the California Supreme Court [in *Ransom*] did not approach the problem as one dealing with fine niceties of terminology." (*Metropolitan Life Ins. Co.* v. *Grant* (9th Cir. 1959) 268 F.2d 307, 309.)

The fourth and final distinction is said to be the absence in the Brunt receipt of any recital that the payment is a premium payment. Again we refer defendant to its stipulation that the payment was in fact equivalent to the premium for the first month. Defendant is now bound thereby.

Basing its claims on the premise that the language of the instrument is unambiguous, defendant has cited several decisions to the effect that good health and insurability may properly be made conditions precedent to insurance coverage.[2] The premise, of course, is a false one. The receipt provides that any policy thereafter issued will be effective as of the date of payment "if the applicant and eligible members of the family, in the opinion of the Company's authorized officers in Los Angeles, were on the date of the payment

---

[2]Four of the cases cited are discussed in defendant's brief. One such decision, *Debenport* v. *Great Commonwealth Life Ins. Co.* (Tex. Civ. App.) 324 S.W.2d 566, seems out of harmony with a later decision of the Texas Supreme Court in *United Founders Life Ins. Co.* v. *Carey,* — Tex. — [363 S.W.2d 236].

insurable and acceptable as a standard risk under its regular underwriting practices and standards as applied for." There is no way of knowing, however, how long in advance of the approval of the application or issuance of the policy the requisite opinion will be formed, whether three weeks or three months. If the above opinion were not forthcoming within one month's time, would the company expect another month's payment in advance without some sort of temporary coverage? In that event, some further acts might also be required, perhaps in the form of a medical examination.

Defendant, it seems to us, has not met the test required by the *Ransom* case that "unequivocal terms" must be used if a company's satisfaction as to the applicant's insurability is to be a condition precedent to the issuance of the policy. In this connection, we are fortified by the reasoning of the court in *Metropolitan Life Ins. Co.* v. *Grant, supra,* 268 F.2d 307. The case is not mentioned in defendant's brief; unlike defendant's authorities, the result there reached is based directly on the court's construction of the *Ransom* decision. The language used in the *Ransom* and *Grant* clauses were held to be similar in import;[3] the language in the present receipt is not dissimilar in that respect. The insurance company made almost precisely the same argument in *Grant* as it does at bar, namely, that the critical words stated a condition precedent: "Appellant argues that the fact that the Ransom application in stating conditions uses the term *provided* and the application present here uses the term *if* distinguishes the two cases on the basis that the *if* language is that of a condition precedent whereas the *provided* language is that of a condition subsequent. We are unable to agree with such a distinction." (P. 310.) The court then goes on to say that "The same ambiguity present in Ransom as to what it means for insurance to be effective from the date of the policy application if some further acts of the company are required is presented to us. Appellant seeks to explain the function of the language of relation back by showing that the premium is based on the age of the applicant at the time of

---

[3]The receipt given for the *Grant* premium, described by the court "as even more indicative of immediate coverage," states: "If the sum collected at the time Part A of this application is signed is at least equal to the first premium on the policy applied for and if such application is approved at the Company's Home Office for the class, plan, and amount of insurance therein applied for, then the insurance in accordance with the terms of the policy applied for shall be in force from this date. . . ." (Footnote p. 310.)

the application rather than at the time of the approval by the home office which is an advantage to the applicant if he pays the premium in advance. That result could be indicated by much clearer language thus eliminating the ambiguity present in the language actually used and thus avoid leading the layman into believing that coverage was in force from the day of application when the premium was paid in advance." (P. 310.)

In the absence of other appropriate language, as in *Grant* as well as in *Ransom*, the provision in the instant document for immediate coverage would be meaningless unless the condition of satisfaction is regarded as a condition subsequent, namely, that plaintiff is covered from the date of his application (and premium payment) until the company expressed its dissatisfaction as to his acceptability. Too, the use of appropriate language could have avoided the belief by plaintiff that he was covered at the time of his advance premium payment; it is this sort of result that the *Ransom* decision frowns upon. "It may be inferred from defendant's failure to remedy the situation by appropriate language that the companies would rather assume a calculated risk in an isolated case such as this, than lose the benefits flowing from the general acceptance of premiums in advance, thus binding and committing the insured immediately to the contract as written." (*Wood* v. *Metropolitan Life Ins. Co.*, 193 F.Supp. 371, 374.)

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied January 6, 1964.